SYLVIA FLEMING ET AL. *v.* CITY OF
BRIDGEPORT ET AL.
(AC 24640)

Dranginis, Flynn and West, Js.

Argued January 18—officially released November 29, 2005

*Alan Rosner*, with whom, on the brief, was *Jennifer Vickery*, for the appellant (named plaintiff).

*Barbara Brazzel-Massaro*, associate city attorney, for the appellees (named defendant et al.).

*Opinion*

WEST, J. The plaintiff Sylvia Fleming[1] appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the defendants, the city of Bridgeport (city); Sergeant Solomon Holly and Officers Garfield Burns, Juan Gonzalez and David Santos of the Bridgeport police department (police defendants); and James Dixon and Susie Dixon (Dixons).[2] On appeal, the plaintiff claims that the court improperly determined that (1) the Dixons did not violate General Statutes § 47a-43,[3] the entry and detainer statute, (2) the police defendants did not violate the entry and detainer statute and (3) the police defendants did not violate her rights under the fourth and fourteenth amendments to the United States constitution and her rights under article first, §§ 7 and 9, of the constitution of Connecticut.[4] We

---

[1] The plaintiff Carl Terry withdrew from this case at the commencement of the trial. We therefore refer to Fleming as the plaintiff.

[2] The other defendants, James DiPietro and Keith Ruffin, Bridgeport police officers, are not parties to this appeal.

[3] General Statutes § 47a-43 (a) provides in relevant part: "When any person . . . (2) having made a peaceable entry, without the consent of the actual possessor, holds and detains [any land, tenement or dwelling unit] with force and strong hand, or . . . (4) when the party put out of possession would be required to cause damage to the premises or commit a breach of the peace in order to regain possession, the party thus ejected, held out of possession, or suffering damage may exhibit his complaint to any judge of the Superior Court."

[4] The plaintiff also claims that the court erroneously found that Burns rather than the plaintiff called for additional police assistance when the police defendants allegedly violated the entry and detainer statute. We

affirm in part and reverse in part the judgment of the trial court.

The plaintiff's father, Ed Harris, was a tenant of an apartment in a three-family residential building owned by the Dixons in Bridgeport. Carl Terry was Harris' cotenant. The plaintiff occasionally stayed in the apartment from 1993 to 1997 as a guest of Harris. In November, 1997, the plaintiff moved into the apartment full-time without the Dixons' permission. After Harris moved to a nursing home in early 1998, the plaintiff continued to live in the apartment with Terry.

Susie Dixon called police to the apartment on May 7, 1998, because the plaintiff was intoxicated and screaming. Officers Gonzalez and Santos responded. The Dixons told the officers that the plaintiff was not a tenant. Terry agreed that the plaintiff was merely a guest and asked the officers to remove her from the premises. Although the plaintiff complied with the officers' order to leave, she swore at the Dixons and was arrested on a charge of breach of the peace. Terry posted bail for the plaintiff, and she then returned to the apartment.

On May 8, 1998, the Dixons called police again because the plaintiff was causing a disturbance. Officer Burns responded. James Dixon told Burns that the plaintiff was not a tenant and asked him to remove her from the apartment. The plaintiff agreed to leave but remained in a bathroom for forty minutes and then ran into a bedroom for thirty minutes, claiming that she was dressing. Sergeant Holly arrived to assist Burns, and they arrested the plaintiff on charges of criminal trespass and disorderly conduct. In November, 1998, the plaintiff filed a complaint against the defendants, alleging unlawful entry and detainer and violation of

---

not consider that claim because the identity of the person who called for additional police assistance does not bear on the issues before this court.

her constitutional rights. Following a trial to the court, the court rendered judgment in favor of the defendants on all counts. This appeal followed.

I

The plaintiff first claims that the court improperly determined that the Dixons did not violate the entry and detainer statute. We agree, but only with respect to the events of May 8, 1998.

"The process of entry and detainer is in its nature an action by which one in the possession and enjoyment of any land, tenement or dwelling unit, who has been deprived of it, may be restored to the possession and enjoyment of that property. . . . In an action commenced under the entry and detainer statute, § 47a-43, the plaintiff must show that he was in actual possession of the premises at the time of the defendant's entry. . . . Generally, the inquiry is whether the one claiming actual possession has exercised the dominion and control that owners of like property usually exercise, although it is not necessary to show a continuous personal presence on the land.[5] . . .

"The question of whether the plaintiff was in actual possession at the time of the defendant's entry is one for the trier of fact. . . . Our review of questions of fact is limited to the determination of whether the findings were clearly erroneous. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although

[5] We note that an illegal possessor may be in actual possession of property and may commence an action in entry and detainer. See *Karantonis* v. *East Hartford*, 71 Conn. App. 859, 861, 804 A.2d 861, cert. denied, 261 Conn. 944, 808 A.2d 1137 (2002).

there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Evans* v. *Weissberg,* 87 Conn. App. 180, 182, 866 A.2d 667 (2005).

The court found that the plaintiff had been in actual possession of the apartment from November, 1997, through May 6, 1998, and that she had failed to prove that she was in "lawful or peaceable possession" on May 7 and 8, 1998. Although the plaintiff was an illegal possessor, she nonetheless was in actual possession on May 7 and 8, 1998, when the police defendants removed her from the apartment. We conclude that the court's failure to find that the plaintiff was in actual possession on May 7 and 8, 1998, was clearly erroneous.

We now turn to the court's finding that the Dixons did not violate the entry and detainer statute. The evidence in the record indicates that on May 7, 1998, Gonzalez and Santos ordered the plaintiff to leave the apartment primarily because Terry asked them to remove her. In contrast, on May 8, 1998, Holly and Burns ordered the plaintiff to leave the apartment primarily because the Dixons asked them to remove her. In requesting that the officers remove the plaintiff from the apartment she actually possessed, the Dixons held and detained the premises with force and strong hand in violation of § 47a-43 (a) (2). We therefore reverse the court's judgment only to the extent that the court found no violation of § 47a-43 (a) (2) by the Dixons on May 8, 1998.

At trial, the plaintiff had an opportunity to prove that she had suffered damages as a result of the Dixons' unlawful entry and detainer, but she did not attempt to do so. The court therefore found that she had suffered no damages. We conclude, however, that she is entitled to nominal damages. See *Reader* v. *Cassarino,* 51 Conn.

App. 292, 297–98, 721 A.2d 911 (1998); 35A Am. Jur. 2d 1078, Forcible Entry and Detainer § 58 (2001) (when claim for compensatory damages not supported, judgment for nominal damages only may be rendered). Accordingly, we remand the case to the trial court with direction to render judgment awarding $1 in nominal damages to the plaintiff.[6]

## II

The plaintiff next claims that the court improperly determined that the police defendants did not violate the entry and detainer statute.[7] We disagree.

At issue is whether the police defendants performed a governmental duty requiring the exercise of judgment or discretion. If so, they are immune from liability. "[A] municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act. . . . The word ministerial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted.) *Prescott* v. *Meriden*, 273 Conn. 759, 763, 873 A.2d 175 (2005). "The immunity from liability for the performance of discretionary acts by a municipal employee is subject to three exceptions or circumstances under which liability may

---

[6] The plaintiff also requested attorney's fees. Because General Statutes §§ 47a-45a (a) and 47a-46 do not contain any express language authorizing an award of attorney's fees, we will not presume that the legislature intended those provisions to operate in derogation of our long-standing common-law rule disfavoring the award of attorney's fees to the prevailing party. See *Czaplicki* v. *Ogren*, 87 Conn. App. 779, 790, 868 A.2d 61 (2005).

[7] Pursuant to General Statutes § 52-557n (a) (2) (B), the city cannot be held liable for the actions of its police. Section 52-557n (a) (2) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

attach even though the act was discretionary: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." (Internal quotation marks omitted.) *Colon* v. *Board of Education*, 60 Conn. App. 178, 180–81, 758 A.2d 900, cert. denied, 255 Conn. 908, 763 A.2d 1034 (2000). "[T]he ultimate determination of whether qualified immunity applies is ordinarily a question of law for the court . . . ." (Internal quotation marks omitted.) Id., 181. Accordingly, our review is plenary.

The plaintiff concedes that the police defendants performed discretionary acts when they removed her from the apartment on May 7 and 8, 1998. The plaintiff argues, however, that the first immunity exception applies because the police defendants should have determined that she was in actual possession and therefore should not have been removed from the apartment. We find that argument unpersuasive because the police defendants' decision to remove the plaintiff does not qualify as a failure to act for purposes of the first immunity exception. The plaintiff also argues that the third immunity exception applies because the police defendants acted maliciously. We disagree because we find their actions reasonable under the circumstances as a matter of law. They had no basis on which to conclude that the plaintiff was a tenant of the apartment because the Dixons and Terry stated that she was not a tenant. We conclude that the police defendants are immune from liability and, therefore, reject the plaintiff's claim to the contrary.

## III

The plaintiff next claims that the court improperly determined that the police defendants did not violate her federal and state constitutional rights. We disagree.

We first address the plaintiff's federal constitutional claims. The plaintiff claims that the police defendants violated her fourth amendment right against unreasonable seizure of property and her fourteenth amendment right to due process. See 42 U.S.C. § 1983.[8] The police defendants argue that federal qualified immunity shields them from liability because they reasonably believed that the plaintiff was not in actual possession of the apartment when they ordered her to leave.

"[A] claim for qualified immunity from liability for damages under § 1983 raises a question of federal law . . . and not state law. Therefore, in reviewing . . . claims of qualified immunity we are bound by federal precedent, and may not expand or contract the contours of the immunity available to government officials." (Citation omitted; internal quotation marks omitted.) *Schnabel* v. *Tyler*, 230 Conn. 735, 742–43, 646 A.2d 152 (1994). "Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (Internal quotation marks omitted.) *Tuchman* v. *State*, 89 Conn. App. 745, 762, 878 A.2d 384, cert. denied, 275 Conn. 920, 883 A.2d 1252 (2005).

---

[8] Section 1983 of title 42 of the United States Code provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights . . . secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

We agree with the police defendants that they reasonably could not have known that the plaintiff actually possessed the apartment on May 7 and 8, 1998, because the Dixons and Terry stated that she was not a tenant. The police defendants therefore could not have known that removing the plaintiff from the apartment she actually possessed would violate her civil rights. Because federal qualified immunity applies to the police defendants' conduct, we reject the plaintiff's federal constitutional claims.

Next, we address the plaintiff's state constitutional claims. The plaintiff claims that the police defendants violated her rights under article first, §§ 7[9] and 9,[10] of the constitution of Connecticut. If the police defendants' actions were discretionary, however, then the police defendants are immune from liability. Although the plaintiff concedes that the police defendants performed discretionary acts when they removed her from the apartment on May 7 and 8, 1998, she argues that the first or third immunity exception applies. See *Colon* v. *Board of Education*, supra, 60 Conn. App. 180–81. We disagree for the same reasons that we rejected the plaintiff's argument regarding the police defendants' immunity from liability for having violated the entry and detainer statute. The police defendants' failure to determine that the plaintiff was in actual possession does not qualify as a failure to act for purposes of the first immunity exception. The third immunity exception does not apply because the police defendants acted

[9] Article first, § 7, of the constitution of Connecticut provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[10] Article first, § 9, of the constitution of Connecticut provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

reasonably under the circumstances. We therefore reject the plaintiff's state constitutional claims.

The judgment is reversed only as to the determination that the Dixons did not violate § 47a-43 (a) (2) on May 8, 1998, and the case is remanded with direction to render judgment awarding $1 in nominal damages to the plaintiff. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.