******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WASHINGTON MUTUAL BANK *v.* LINDA S.
COUGHLIN ET AL.
(AC 37645)

DiPentima, C. J., and Prescott and Pellegrino, Js.

*Argued May 19—officially released September 13, 2016*

(Appeal from Superior Court, judicial district of New
London, Hon. Robert C. Leuba, judge trial referee.)

*Paulann H. Sheets*, for the appellants (named defendant et al.).

*Brian D. Rich*, with whom was *Peter R. Meggers*, for
the appellee (substitute plaintiff).

*Opinion*

PRESCOTT, J. The defendants Linda S. Coughlin and Daniel F. Coughlin[1] appeal from the judgment of strict foreclosure rendered by the trial court in favor of the plaintiff, JPMorgan Chase Bank, National Association.[2] The defendants' sole claim on appeal[3] is that the court improperly denied their motion to dismiss, filed on the eve of trial. In that motion, they argued that the court lacked subject matter jurisdiction due to the original plaintiff's purported failure to comply with the notice requirement set forth in General Statutes § 8-265ee (a),[4] which is part of the Emergency Mortgage Assistance Program (EMAP). See General Statutes §§ 8-265cc through 8-265kk. The plaintiff responds that the original plaintiff did provide notice of EMAP to the defendants out of an abundance of caution, but that the defendants were not entitled to notice under § 8-265ee because the subject property was not their principal residence at the time the action was commenced. See General Statutes § 8-265ff.[5] Accordingly, it contends that the court properly denied the defendants' motion to dismiss. Having thoroughly reviewed the record, we agree with the plaintiff that the defendants were not entitled to notice pursuant to § 8-265ee, and, thus, we do not decide whether, in a case in which § 8-265ee is applicable, failure to comply with its notice requirement implicates the court's subject matter jurisdiction. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. In June, 2004, the defendants purchased real property located at 848-850 Noank Road in Mystic (subject property). At the time they purchased the subject property, the defendants' intent was to use it as a summer residence. The defendants' main residence was a home that Linda Coughlin owned in Norwalk.

In order to finance the purchase of the subject property, the defendants executed a promissory note in the amount of $1,700,000 in favor of Washington Mutual Bank, FA. As security for that note, the defendants also executed a purchase money mortgage on the subject property in favor of Washington Mutual Bank, FA. In addition to the note and mortgage, the defendants also signed other documents at the real estate closing, including a second home rider. The second home rider provided that the defendants would use the subject property only as a second home.

On July 1, 2008, Washington Mutual Bank, formerly known as Washington Mutual Bank, FA, commenced this action seeking foreclosure of the mortgage because the defendants had defaulted on the note by failing to make required monthly payments. The note and mortgage later were acquired by the plaintiff, which, in January, 2009, was substituted as plaintiff in place of Washington Mutual Bank.

For approximately six years, the defendants represented themselves in the foreclosure action.[6] During that time, the defendants filed multiple bankruptcy actions that halted progress of the foreclosure proceedings for several years. Eventually, however, the plaintiff obtained relief from the latest bankruptcy stay, and a trial date was set. The defendants then retained their current counsel.[7] On the day before trial, after 5 o'clock in the afternoon, the defendants electronically submitted a motion to dismiss the action.[8]

In their motion to dismiss, the defendants alleged that the original plaintiff had not complied with § 8-265ee (a) because it failed to provide them with notice of EMAP, and that, because of the lack of the statutorily required notice, the court did not have subject matter jurisdiction to hear the foreclosure action. Attached to the motion were affidavits by the defendants averring that they never were notified about EMAP. The defendants also suggested that the plaintiff had not remedied any lack of notice by filing "a defective and untrue affidavit of compliance five years and three months after commencement of the suit." The defendants were referring to an affidavit that the plaintiff had filed with the court a few weeks earlier. In that affidavit, a paralegal for Bendett & McHugh, P.C., the firm that represented the original plaintiff,[9] averred in relevant part as follows: "Based on Bendett & McHugh, PC's business records and its regular business practices, the plaintiff has complied with the provisions of [§] 8-265ee (a) (also known as Public Act[s] [2008, No.] 08-176, § 7) by Bendett & McHugh, PC giving on June 30, 2008 to all mortgagors a notice containing the information required by said statute."

The parties appeared for trial on the morning of October 21, 2014. Because the arguments raised in the defendants' motion to dismiss purported to implicate the court's subject matter jurisdiction, the defendants asked the court to postpone the trial to a later date. The plaintiff argued against any further continuances and requested a summary hearing on the motion to dismiss, suggesting that there was no merit to the motion and that it was simply intended to cause further delay. In support of its argument that the motion lacked merit, the plaintiff brought to the court's attention that the defendants had conceded in their motion to dismiss that EMAP notice was required only with respect to mortgages that encumbered a mortgagor's principal residence, and that it was prepared to offer the defendants' own deposition testimony establishing that the subject property was not their principal residence when the foreclosure action was commenced.[10] After taking a short recess, the court decided not to grant the defendants' request for a continuance, but to hear arguments on the motion to dismiss.

Counsel for the defendants argued that her clients

never received the statutorily mandated notice concerning EMAP, and that they did not learn of the program until after she began representing them and made inquiry about it. As proof of this assertion, she directed the court's attention to the defendants' affidavits appended to the motion to dismiss. Counsel also challenged the earlier affidavit filed by the plaintiff in which a paralegal asserted that proper notice was given to all mortgagors, arguing that the affidavit was not timely and questioning its veracity. She asserted that the legislature had intended that proper notice be a jurisdictional prerequisite to filing a foreclosure action, explaining in detail the history of the EMAP program and its importance in helping to keep parties in their homes during the financial crisis. Although counsel suggested that the defendants were eligible for EMAP because the subject property was the defendants' principal residence, she did not offer any evidence in support of that assertion.

The plaintiff opposed the motion to dismiss, arguing that the defendants had been provided with the required notice as indicated in the affidavit filed with the court and that the defendants had failed to demonstrate beyond mere conjecture that the notice requirement implicated the court's subject matter jurisdiction. The plaintiff also again emphasized that the notice provision was not applicable here because the subject property was not the defendants' primary residence when the action was commenced. By way of proof, the plaintiff cited to portions of the defendants' July 1, 2014 deposition testimony.

When the court later stated that it would not be "able to consider the residency issue without the evidence which [the plaintiff] referred to, which is not of record," the plaintiff indicated it was prepared to offer the original deposition transcripts but did not believe there was any dispute over what the transcripts said. An extensive colloquy then ensued, during which the defendants' counsel made the following statements regarding the defendants' residency: "I think I'm able to speak that this—she was in Norwalk and made—always come every weekend and all summer was spent here after they bought the house *and it became permanent in 2009.*" (Emphasis added). Although she later asserted that the subject property had been the defendants' "primary residence since they bought the house," she also stated: "Have they been continuously living there? No. You have been—it's been there since 2009 . . . ." The transcripts of the defendants' depositions were not made a part of the evidentiary record at that time.[11]

At the conclusion of arguments, and after taking a short recess, the court issued an oral ruling denying the motion to dismiss. The court stated as follows: "I want to assure counsel that the court has considered the arguments which have been advanced and the material

which has been filed prior to today as well as the citations of authority which have been given to the court for review. Having done that, the court will deny the motion to dismiss for the reason that it finds that the compliance with [EMAP] is not a jurisdictional matter which requires the granting of the motion. For this reason, the motion is denied." The court made no factual findings, cited no legal authority, and gave no further explanation for its ruling.

After denying the motion to dismiss, the court heard other pretrial motions before it proceeded with the trial on the foreclosure complaint. The trial continued that afternoon and concluded the following day. The parties filed posttrial briefs. The defendants later filed a motion asking the court to open the evidence so that they could present additional evidence. The court denied the motion.

On January 8, 2015, the court rendered a judgment of strict foreclosure finding, in relevant part, that the total debt owed by the defendants, including attorney's fees, was $2,666,207.13, and that the fair market value of the property was $2,100,000. As part of its decision, the court also made the following factual findings relevant to the present appeal: the defendants had become interested in purchasing the subject property as a summer residence, they signed a second home rider at closing in 2004 indicating that the property would be used only as a second home, and, "in 2009, the defendants moved to make the [subject property] their permanent residence when their Norwalk residence was foreclosed." The court set law days to commence on February 24, 2015. This appeal followed.[12]

The defendants' sole claim on appeal is that the court improperly denied their motion to dismiss the foreclosure action by concluding that "compliance with [EMAP] is not a jurisdictional matter which requires the granting of the motion." They allege that, because the original plaintiff failed to provide them with proper notice in accordance with § 8-265ee, which they maintain was a statutory prerequisite to filing the present foreclosure action, the trial court lacked subject matter jurisdiction over the action and should have granted their motion to dismiss. The plaintiff's principal response is that it is unnecessary in the present case to consider whether the defendants received proper notice or whether compliance with § 8-265ee is a jurisdictional prerequisite to the filing of a foreclosure action because it is apparent from the record that the defendants were not entitled to the EMAP notice. According to the plaintiff, because its predecessor sought to foreclose a mortgage that did not encumber property that was the defendants' "principal residence" at the time the action was commenced, § 8-265ee is inapplicable and we should affirm the court's denial of the motion to dismiss on that basis.[13] We agree with the plaintiff.[14]

"Our standard of review of a trial court's findings of fact and conclusions of law in connection with a motion to dismiss is well settled. A finding of fact will not be disturbed unless it is clearly erroneous. . . . [If] the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts. . . . Thus, our review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *JPMorgan Chase Bank National Assn.* v. *Simoulidis*, 161 Conn. App. 133, 135–36, 126 A.3d 1098 (2015), cert. denied, 320 Conn. 913, 130 A.3d 266 (2016). "The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Dorry* v. *Garden*, 313 Conn. 516, 521, 98 A.3d 55 (2014).

To the extent that our review requires us to construe statutory provisions, this presents a legal question over which our review also is plenary. Id., 525. "That review is guided by well established principles of statutory interpretation. . . . As with all issues of statutory interpretation, we look first to the language of the statute. . . . In construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended." (Citation omitted; internal quotation marks omitted.) Id.

Because the court denied the motion to dismiss without clearly stating either the factual or legal basis for its decision, it is difficult to discern with any degree of certainty whether the court broadly concluded that the EMAP notice requirements in § 8-265ee did not implicate the court's subject matter jurisdiction, or whether it concluded more narrowly that subject matter jurisdiction simply was not implicated under the facts of the present case, either because it determined that proper notice had in fact been provided to the defendants or because it agreed with the plaintiff that notice was never required as the subject mortgage did not encumber the defendant's principal residence. Nevertheless, because we exercise plenary review regarding a court's legal conclusion in deciding a motion to dismiss, we may affirm the court's decision on any of these grounds. See *Rafalko* v. *University of New Haven*, 129 Conn. App. 44, 51 n.3, 19 A.3d 215 (2011) ("[i]t is axiomatic that [w]e may affirm a proper result of the trial court for a different reason" [internal quotation marks omitted]).

Further, although it is axiomatic that this court cannot make factual findings, factual conclusions may be drawn on appeal if "the subordinate facts found [by the trial court] make such a conclusion inevitable as a

matter of law . . . or where the undisputed facts or uncontroverted evidence and testimony in the record make the factual conclusion so obvious as to be inherent in the trial court's decision." (Citations omitted; internal quotation marks omitted.) *State* v. *Reagan*, 209 Conn. 1, 8–9, 546 A.2d 839 (1988); see also *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership*, 157 Conn. App. 139, 171, 117 A.3d 876, cert. denied, 318 Conn. 902, 122 A.3d 631 (2015). In deciding whether the trial court lacked jurisdiction over the action, we are cognizant that this question invokes the existing record, which, at this juncture, necessarily includes those facts established at trial.[15] We note that the defendants have not challenged as clearly erroneous any of the court's factual findings that underlie the judgment of strict foreclosure.

Section 8-265ee (a) provides in relevant part: "On and after July 1, 2008, a mortgagee who desires to foreclose *upon a mortgage which satisfies the standards contained in subdivisions (1), (9), (10) and (11) of subsection (e) of section 8-265ff*, shall give notice to the mortgagor by registered, or certified mail, postage prepaid at the address of the property which is secured by the mortgage. No such mortgagee may commence a foreclosure of a mortgage prior to mailing such notice. . . ." (Emphasis added.) It is the defendants' claim on appeal that the legislature intended that last sentence to divest the trial court of jurisdiction if notice was not properly provided. By its express terms, however, the obligation to give notice pursuant to § 8-265ee before commencing a foreclosure action applies only if the plaintiff is seeking to foreclose a mortgage that satisfies certain standards enumerated in § 8-265ff (e). Because those standards are stated in the conjunctive, each must be satisfied before a mortgage falls within § 8-265ee. See *Penn* v. *Irizarry*, 220 Conn. 682, 687, 600 A.2d 1024 (1991) ("[t]he use of [a] conjunctive . . . indicates that both conditions must be fulfilled"). For purposes of the present analysis, the relevant provision is that found in subdivision (1) of subsection (e) of § 8-265ff.

Section 8-265ff (e) provides in relevant part: "No emergency mortgage assistance payments may be provided unless the authority finds that: (1) The real property securing the mortgage . . . is *the principal residence of the mortgagor* . . . ." (Emphasis added.) The defendants conceded at oral argument before this court that unless the subject property was their principal residence at the time the present foreclosure action was commenced in July, 2008, their claim that they were entitled to notice of EMAP and that the failure to receive such notice deprived the court of subject matter jurisdiction fails as a matter of law.

The term "principal residence" is not defined by any statute, regulation or case law of which we are aware, nor have the parties cited to any. The term, therefore,

must be afforded its plain and ordinary meaning. "[If] a statute does not define a term, it is appropriate to look to the common understanding expressed in the law and in dictionaries." (Internal quotation marks omitted.) *Funaro* v. *Baisley*, 57 Conn. App. 636, 638, 749 A.2d 1205, cert. denied, 254 Conn. 902, 755 A.2d 218 (2000).

Merriam Webster's Collegiate Dictionary, 11th Edition, defines residence as "the place where one actually lives as distinguished from one's domicile or a place of temporary sojourn . . . ." It defines the adjective "principal" as meaning "most important, consequential, or influential: chief . . . ." Thus, the ordinary or plain meaning of the term "principal residence" in this context means the person's chief or primary home, as distinguished from a secondary residence or a vacation home. We also take note of the fact that the statute refers to *the* principal residence of the mortgagor not *a* principal residence, suggesting that a person can have only one principal residence at any given time for purposes of this statute.

The trial court in the present case never made an express finding that the subject property was not the defendants' "principal" residence in July, 2008, when the foreclosure action was commenced, either in denying the motion to dismiss or in its memorandum of decision rendering the judgment of strict foreclose. The court did find, however, that the defendants lived in a home in Norwalk at the time they purchased the subject property as their summer residence, and that it was not until 2009, after the Norwalk residence was foreclosed on, that the defendants sought to make the subject property their "permanent" residence. The court also found that the defendants had signed a second home rider at the time they purchased the subject property, indicating their agreement to utilize the subject property only as a secondary residence. That document, although not itself dispositive of the issue before us, lends additional support to the notion that, until the Norwalk residence was lost in foreclosure in 2009, the subject property was not the defendants' principal residence. Those findings in conjunction with the following additional subordinate facts in the record support the inevitable conclusion that the subject property was not the defendants' principal residence when the foreclosure action was commenced.

As part of her argument at the hearing on the motion to dismiss, counsel for the defendants made what amounted to a judicial admission that, until 2009, which was after the foreclosure action was commenced, the defendants did not live at the subject property other than on weekends and in the summer.[16] She later appeared to qualify an assertion that the subject property was the defendants' principal residence, by again recognizing that it was not their full-time residence

until 2009.

Even if we were to discount the statements of the defendants' counsel at the hearing on the motion to dismiss, Linda Coughlin gave undisputed testimony at trial that, until 2009, she and her husband listed their Norwalk home, not the subject property, as their address on their federal tax returns. Although Daniel Coughlin did not testify at trial, his deposition transcript, which the plaintiff had referenced at the hearing on the motion to dismiss as establishing that the subject property was not the defendants' principal residence, was entered as a full exhibit. In his deposition, after identifying the subject property by address as his "primary residence," Daniel Coughlin is asked: "How long have you lived at this address?" He responds: "It's been our primary address since 2009."

Thus, the factual record leads us to only one reasonable conclusion. Namely, before 2009, the subject property was not the defendants' chief or primary home and, thus, not "the principal residence." Accordingly, when the present foreclosure action was filed in 2008, the defendants' mortgage was not "a mortgage which satisfies the standards contained in subdivisions (1), (9), (10) and (11) of subsection (e) of section 8-265ff"; General Statutes § 8-265ee; and, thus, the original plaintiff did not have to provide EMAP notice in accordance with § 8-265ee prior to commencing the foreclosure action. Having concluded that the notice requirement in § 8-265ee was inapplicable here, it is irrelevant for purposes of this appeal whether proper notice in fact was provided as sworn in the plaintiff's pretrial affidavit, or whether failure to give such notice, if applicable, implicates the subject matter jurisdiction of the court. Under these facts, the defendants could not prevail on their motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The following parties also were defendants in the underlying action by virtue of an interest in the subject property: National City Bank, Greystone Business Credit, LLC, Greystone Business Credit REO, LLC, Thirty Five Thirty Nine West Thirty Three Street, LLC, and Cuda & Associates, LLC. None of these additional defendants participated in the underlying action or in the present appeal. Accordingly, in this opinion, we refer to the Coughlins as the defendants.

[2] JPMorgan Chase Bank, National Aassociation, was substituted as the plaintiff for Washington Mutual Bank in January, 2009.

[3] The defendants raised a number of other claims in their preliminary statement of the issues, but, because they have not addressed those claims in their appellate brief, the claims are deemed abandoned. See *Brown* v. *Otake*, 164 Conn. App. 686, 698 n.8,    A.3d    (2016). Furthermore, although the defendants filed an amended appeal on August 18, 2015, purportedly challenging postjudgment rulings rendered by the trial court on February 26, 2015, the defendants have not briefed any claims of error pertaining to the amended appeal and, therefore, any such claims also are deemed abandoned. See *Patino* v. *Birken Mfg. Co.*, 304 Conn. 679, 687 n.10, 41 A.3d 1013 (2012).

[4] General Statutes § 8-265ee (a) provides: "On and after July 1, 2008, a mortgagee who desires to foreclose upon a mortgage which satisfies the standards contained in subdivisions (1), (9), (10) and (11) of subsection (e)

of section 8-265ff, shall give notice to the mortgagor by registered, or certified mail, postage prepaid at the address of the property which is secured by the mortgage. No such mortgagee may commence a foreclosure of a mortgage prior to mailing such notice. Such notice shall advise the mortgagor of his delinquency or other default under the mortgage and shall state that the mortgagor has sixty days from the date of such notice in which to (1) have a face-to-face meeting, telephone or other conference acceptable to the authority with the mortgagee or a face-to-face meeting with a consumer credit counseling agency to attempt to resolve the delinquency or default by restructuring the loan payment schedule or otherwise, and (2) contact the authority, at an address and phone number contained in the notice, to obtain information and apply for emergency mortgage assistance payments if the mortgagor and mortgagee are unable to resolve the delinquency or default."

[5] General Statutes § 8-265ff (e) provides in relevant part: "No emergency mortgage assistance payments may be provided unless the authority finds that: (1) The real property securing the mortgage . . . is the principal residence of the mortgagor . . . ."

[6] Daniel Coughlin is a patent attorney.

[7] The trial originally was scheduled for September 16, 2014. The court granted the defendants' request for a continuance, setting a new trial date of October 21, 2014. The defendants twice requested additional continuances to permit new counsel to conduct additional discovery. The court denied both requests.

[8] Because the motion was received electronically after 5 p.m., it was deemed filed on October 21, 2014. See Practice Book § 7-17.

[9] At the time the foreclosure action was commenced, Bendett & McHugh, P.C., was known under its former name of Reiner, Reiner & Bendett, P.C.

[10] In addition to this argument, the plaintiff also asserted that the court should deny the motion because the defendants had been provided notice despite no obligation to do so and, in any event, the defendants had failed to provide any legal authority establishing that failure to provide notice implicated the court's subject matter jurisdiction.

[11] They were admitted as full exhibits at trial, however, and, thus, are part of the record before us on appeal.

[12] During the pendency of this appeal, the defendants filed a motion for articulation with the trial court asking it to articulate the basis for its decision denying the motion to dismiss. The trial court, after a hearing, denied the motion for articulation without comment. The defendants filed a motion for review of that decision pursuant to Practice Book § 66-7. This court granted the motion for review, but denied the relief requested therein.

[13] Although the plaintiff suggests in its appellate brief that a determination by this court that § 8-265ee is inapplicable would render the defendants' appeal moot, we disagree that its argument truly implicates the mootness doctrine. In determining whether an appeal is moot, we ordinarily do not decide the merits of the claims raised; rather, we ask whether there is any practical relief that could be granted even assuming that the appellant *prevails* on appeal. Here, the plaintiff's argument, which was raised at the hearing on the motion to dismiss as a basis for denying the motion, is more akin to an alternative ground on which to affirm the court's decision.

[14] Deciding this case in this posture is not unfair to the defendants because they were fully apprised of the issue prior to the appeal by the fact that it was part of the plaintiff's argument in opposition to the motion to dismiss. The issue of when the subject property became the defendants' main residence also was explored both at the hearing on the motion to dismiss and during the foreclosure trial. Accordingly, the defendants had a full and fair opportunity to develop the record to establish that the subject property was, in fact, their principal residence when the foreclosure action was commenced. The defendants also had an opportunity to respond to the plaintiff's argument in their reply brief and at oral argument before this court.

[15] Although we are aware that facts found by the court at trial may not have been part of the record when the trial court decided the motion to dismiss moments before the start of trial, in reviewing the propriety of the court's decision, it would be inefficient to ignore those facts on appeal and to remand the matter back to the trial court for additional fact-finding if those same facts subsequently were determined and are not challenged on appeal.

[16] "Judicial admissions are voluntary and knowing concessions of fact by a party or a party's attorney occurring during judicial proceedings." *Jones* v. *Forst*, 41 Conn. App. 341, 346, 675 A.2d 922 (1996).